# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LINDA HARPER, et al.,

    Plaintiffs,

v.

PILOT TRAVEL CENTERS, LLC,

    Defendant.

Case No. 2:11-cv-759
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

Before the Court are Defendant's Motion to Sever Plaintiffs' Claims or, Alternatively, for Separate Trials (ECF No. 7), Plaintiffs' Memorandum in Opposition (ECF No. 9), and Defendant's Reply in Support of its Motion (ECF No. 14). For the reasons set forth below, this Court **DENIES** Defendant's Motion.

## I. Background

Plaintiffs are five former employees of Defendant Pilot Travel Centers, LLC. Each of them alleges that he or she was a victim of discrimination on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Though the case is still in its early stages, Defendant calls into question the joinder of the five Plaintiffs' claims into one action.

    *A.    Plaintiffs' Factual Allegations*

As relevant to the Motion before the Court, the Plaintiffs' individual allegations are as follows–

1

1. **Plaintiff Linda Harper:** Defendant employed Harper from 1999 until 2009. (ECF No. 1, Complaint, at ¶ 14.) At the time Defendant terminated her employment, Harper was 58 years old and was the co-Manager of Defendant's Marengo, Ohio location. (*Id.* at ¶¶ 13, 15.) In the Fall of 1996, 32-year old Brian English became Harper's Regional Manager; shortly thereafter, Plaintiffs allege that English began a "pattern and practice of harassment" based on Harper's age. (*Id.* at ¶¶ 16, 22.) Harper also learned that English developed a "hit list" of employees, all of whom were over 40 years of age. (*Id.* at ¶¶ 19-20, 24.) Harper alleges that the "hit list" contained the names of at least eight "older" employees, four of whom are Plaintiffs in this action. (*Id.* at ¶ 21.)

Harper contends she was treated less favorably than younger workers and that English promoted several of Harper's younger co-workers despite her superior experience. (*Id.* at ¶¶ 32, 36.) Harper also alleges that her General Manager informed her that English was "trying to push [Harper] out because of her age." (*Id.* at ¶ 39.)

2. **Plaintiff Deberah Greene:** Greene began working for Defendant in March 2006 as a full-time deli host at Defendant's Sunbury, Ohio location. (*Id.* at ¶ 52.) She reported to General Manager Chris Thomas and to Regional Manager English. (*Id.* at ¶ 54.) In May 2009, despite no issues of poor job performance, Greene alleges that her hours were reduced to part-time and her full-time position given to a 17-year old employee. (*Id.* at ¶¶ 55-57.) She also alleges that Thomas and English subjected her to "higher performance standards and different terms and conditions of employment than younger employees." (*Id.* at ¶ 60.)

Green filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) in November 2009, after which she alleges Defendant subjected her to

retaliatory harassment. (*Id.* at ¶¶ 63-65.) Green, who was 54 years old at the time of Defendant's actions, alleges she was constructively discharged. (*Id.* at ¶¶ 51, 66.)

    3.    **Sheila Micholes:** Micholes worked for Defendant from 1999 until 2009 and was 52 years old at the time Defendant terminated her employment. (*Id.* at 70 and ECF No. 9-5.) She was a shift leader at Defendant's Sunbury, Ohio, location and reported to Regional Manager English. (ECF No. 1, at ¶¶ 71-72.) Despite receiving good performance reviews throughout her tenure, Micholes was subjected to "greater and more intense scrutiny," less favorable work hours and shifts, and was "held to a different standard" than younger shift leaders. (*Id.* at ¶¶ 76-78.)

    Micholes applied for a promotion to co-manager and was told by English that he was only hiring co-managers from "outside the company." (*Id.* at ¶ 80.) Micholes alleges English's statement was not true, as Defendant promoted several younger employees to co-manager while Micholes remained a shift leader. (*Id.* at ¶ 81.) And of the candidates who were hired from outside the company for co-manager positions, Micholes alleges that all of them were between 20 and 30 years of age. (*Id.* at ¶ 82.) Defendant eventually terminated Micholes's employment, Plaintiffs allege, in order to "save the job" of a younger shift leader. (*Id.* at ¶¶ 84-85.)

    4.    **Plaintiff Tom Meeks:** Meeks worked for Defendant from 2000 until 2009. (ECF No. 9-3.) At the time Defendant terminated his employment, Meeks was 47 years old and a co-manager at Defendant's Sunbury, Ohio location. (*Id.* and ECF No. 1, at ¶¶ 90-91.) Prior to English becoming his Regional Manager in late 2006, Meeks received good performance reviews and "had a good working relationship with his superiors." (*Id.* at ¶¶ 92-93.)

    After English became Regional Manager over the Sunbury location, Meeks was subjected to "greater and more intense scrutiny" and subjected to higher performance standards than

3

younger co-managers. (*Id.* at ¶¶ 97-100.) Meeks alleges he was placed on performance improvement plans when younger co-managers were not and also alleges that Defendant threatened him with termination for allegedly engaging in an affair with an employee "while the well-known affair of a younger co-manager was overlooked." (*Id.* at ¶¶ 100-101.) Meeks ultimately resigned his position because "the discrimination and harassment had become so intolerable." (*Id.* at ¶ 104.)

       5.    **Plaintiff James Moore:** Moore worked for Defendant as a co-manager at the Arby's Restaurant located in the Defendant's Marengo, Ohio location. (*Id.* at ¶ 109.) Moore reported to supervisor Cinda Kelly (age 37) and Regional Manager English. After English became Regional Manager, Moore was subjected to harassment and discriminatory discipline. (*Id.* at ¶ 115.) Before English became Regional Manager, Moore alleges that his performance reviews were "on track" and that he often received compliments for his customer service. (*Id.* at ¶ 114.)

Moore also alleges that English ordered Kelly to issue two "30-day action plans" to Moore. (*Id.* at ¶ 116.) Despite Kelly telling Moore that he and other co-managers were being placed on 30-day action plans because "the company was moving to higher standards," Moore alleges that the younger co-manager (in his 20s) with whom Moore worked was not placed on a 30-day action plan. (*Id.* at ¶ 117.) Moore alleges that despite his making improvement in all areas addressed in the first 30-day action plan, Kelly informed him that "English wanted [Moore] gone" and placed Moore on another 30-day action plan. (*Id.* at ¶ 119.) Kelly then gave Moore two options: he could resign and receive unemployment or be fired, in which case English would "fight his unemployment." (*Id.*)

In June 2010, Moore's attorney sent Defendant a letter advising that Moore would file a charge of discrimination with the EEOC. (*Id.* at ¶ 122.) After that letter, Moore alleges that English and Kelly retaliated against him, ultimately culminating in Moore's employment being terminated in July 2010. (*Id.* at ¶¶ 124-128.)

### B. *Procedural History*

Each of the Plaintiffs filed charges of discrimination with the EEOC and received "Right to Sue" letters in May 2011. (ECF Nos. 1-1, 1-2, 1-3, 1-4, and 1-6.) Plaintiffs commenced this action on August 19, 2011, alleging age discrimination and harassment in violation of the ADEA. (ECF No. 1, Compl. at 13.) In Count II, Plaintiffs Green and Moore allege a claim of ADEA retaliation. (*Id.* at 14.) Defendant has answered, denying liability (ECF No. 4), and also asks this Court to sever the Plaintiffs' claims into five separate actions under Fed. R. Civ. P. 21. (ECF No. 7.) In the alternative, Defendant asks the Court to order separate trials under Fed. R. Civ. P. 42(b) for each Plaintiff. Plaintiffs oppose the Defendant's Motion, arguing that joinder of their claims into one action is proper under Fed. R. Civ. P. 20. (ECF No. 9.)

## II. Discussion

### A. *Rule 20(a) Permissive Joinder vs. Rule 21 Severance*

The plaintiffs in this case have chosen to bring their claims together in a single lawsuit. Such joinder of plaintiffs is permitted under Fed. R. Civ. P. 20, so long as the joinder meets the requirements of the Rule. A party seeking joinder of claimants under Rule 20 must establish (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined. Fed. R. Civ. P. 20(a)(1).

As this Court has noted, courts "liberally permit joinder under Rule 20(a)," due in no small part to the encouragement given by United States Supreme Court precedent in favor of the joinder of claims, parties, and remedies. *See Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 324 (S.D. Ohio 2002) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Nonetheless, a district court has discretion under Rules 20 and 21 to sever an action if it is misjoined or might otherwise cause delay or prejudice. *Applewhite v. Reichhold Chemicals*, 67 F.3d 571, 574 (5th Cir. 1995); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) (noting it is within district court's sound discretion to decide how to handle a misjoinder of parties under Rule 21). Courts are "more inclined" to allow joinder "when there is overlapping proof and testimony for the claims of the plaintiffs." *Brown* at 324. "Absolute identity of all events" among the several plaintiffs is unnecessary for permissive joinder under Rule 20(a). *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

Defendant opposes joining the five Plaintiffs' claims in this case. Because the Plaintiffs' "work histories" are different and because their allegations involve individualized employment decisions and facts, Defendant argues that their claims do not arise from the same transaction or occurrence. (ECF No. 7, at 8-13.) Whatever "overlap" there may be between the "general types" of claims alleged by the Plaintiffs, Defendant argues that the allegations still involve "individualized employment decisions or other individualized facts," such as Plaintiffs reporting to different managers, working at different locations, or suffering harassment by different persons. (*Id.* 10-13.) Defendant also argues that none of the Plaintiffs reported directly to Regional Manager English, thereby undercutting any theory that Plaintiffs' claims should be joined in one action. (ECF No. 14, at 3.)

6

The problem with the Defendant's argument is that it would have this Court prematurely accept Defendant's version of the case and marginalize (if not disregard) key factual allegations in the Plaintiffs' Complaint. Without discovery having been conducted to this point, the Court at this stage is limited to the allegations in Plaintiffs' Complaint in determining whether the Plaintiffs have properly joined their claims in one action. *See Lee v. Dell Prods., L.P.*, No. 3:06-cv-0001, 2006 U.S. Dist. LEXIS 75573, at *19 and *23 (M.D. Tenn. Oct. 16, 2006). And the Plaintiffs' Complaint alleges enough commonality among their claims to permit their joinder for the time being.

### 1. *"Same transaction or occurrence."*

While Defendant hones in on the differences between the Plaintiffs' individual claims, the presence of some material differences between their allegations does not automatically foreclose their claims from being deemed to arise from the same "transaction or occurrence" for purposes of permissive joinder. *See Montgomery v. STG Intl., Inc.*, 532 F. Supp. 2d 29, 36 (D.D.C. 2008). In the employment discrimination context, courts have found joinder proper when there has been a systematic pattern or practice, or when the plaintiffs have been aggrieved by a common actor. *See id.* at 35-36; *see also Lee*, 2006 U.S. Dist. LEXIS 75573 at *26-27; *Smith v. Northeastern Ill. Univ.*, No. 98-C-3555, 2002 U.S. Dist. LEXIS 3883, at *9 (N.D. Ill. Feb. 28, 2002); *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 143 (N.D.N.Y. 1999). Plaintiffs' Complaint here alleges the sort of discriminatory pattern and common actor that would make it inappropriate to sever their claims at this early stage of the case.

Plaintiffs' allegations indicate an underlying pattern or practice of age discrimination perpetrated by Regional Manager Brian English. As alleged in the Complaint, all of the

7

discriminatory acts began after the Fall of 2006, when Mr. English is alleged to have become the Regional Manager over the Defendant's locations where Plaintiffs worked (*viz.*, Marengo and Sunbury). Four of the five Plaintiffs alleges to have had good working relationships with their supervisors and/or to have received favorable performance reviews until Mr. English became the Regional Manager overseeing their respective workplaces. (*See* ECF No. 1, at ¶¶ 17, 73, 93, 114-115.) And all five of the Plaintiffs allege that English subjected him or her to unfavorable treatment based on age, ranging from harassment, to "higher performance standards" than younger employees, to more "intense scrutiny" than younger employees. (*See id.* at ¶¶ 22, 35-36, 60-61, 75-77, 97-98, 115-118.) Further, one of Plaintiffs' key allegations is that Mr. English developed a "hit list" of employees whom he targeted for termination, all of whom were over 40 years old. (*Id.* at ¶¶ 19-21, 24.) Four of the five Plaintiffs' names are definitively alleged to be on the "hit list," with the fifth Plaintiff possibly on the list as well. (*See id.* at ¶ 21.) Finally, each of the Plaintiffs is alleged to have been adversely affected by acts perpetrated or directed by Mr. English himself over substantially the same time period, giving a common thread to the various actions that Plaintiffs allege to be unlawful age discrimination.

Based on the allegations in the Complaint, there is enough overlap in the factual averments to characterize Plaintiffs' claims as arising from the "same transaction or occurrence" within the meaning of Rule 20(a)(1)(A). Unless and until further factual development shows that the underpinnings of Plaintiffs' theory of pervasive age discrimination is unfounded, the Plaintiffs have alleged enough "transactional relatedness" to satisfy Rule 20. *Cf. Lee*, 2006 U.S. Dist. LEXIS 75573, at *27 (finding eight Plaintiffs' claims for race discrimination to be based on a series of occurrences and transactions despite some differences in the types of employment

8

actions and differences in the specific actors involved).

### 2. *Common Questions of Law and Fact*

The second requirement for permissive joinder under Rule 20 is that "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B). The Court finds that Plaintiffs have alleged facts to satisfy this requirement.

The allegations of the Plaintiffs' Complaint, which the Court must credit at this stage of the case, shows the specter of a discriminatory pattern or policy that affected the Plaintiffs. *See Lee, supra*, at *29-30 (finding that defendant's discriminatory animus and whether defendant failed to promote and/or harassed plaintiffs based on race to be common questions of law and fact); *Mosley*, 497 F.2d at 1334 (finding that the "discriminatory character of the defendants' conduct" was a question of fact common to all plaintiffs). The Plaintiffs have identified Regional Manager English as a common actor cutting across all of the employment decisions and workplace harassment; they have also alleged facts to suggest that Mr. English is the decision maker responsible for creating the age-discriminatory policy that led to Plaintiffs being terminated, constructively discharged, and/or retaliated against. Indeed, the entire tenor of the Plaintiffs' lawsuit is that the age-based animus began after Mr. English took over as Regional Manager and created the alleged "hit list" of employees over 40 years of age targeted for termination. Whether Mr. English did, in fact, have this supposed "hit list" and whether he was, in fact, the catalyst of a discriminatory pattern of conduct after he became Regional Manager are common questions of fact and law that satisfy Rule 20(a)(1)(B). *See Puricelli*, 185 F.R.D. at 143 (finding a common question of law and fact when both plaintiffs alleged discriminatory actions that began after defendant took over their employer and implicated the same person as the "key

9

player" in adverse employment decisions).

Defendant argues that the Court should not view Mr. English as a common thread to justify permissive joinder. In its Reply in Support of the Motion to Sever, Defendant argues that the Plaintiffs' theory, taken to its "logical conclusion," would mean that "every worker who is over 40 and works in Brian English's region could be joined in this action, therefore impermissibly broadening the scope of permissible joinder under the Federal Rules of Civil Procedure." (ECF No. 14, at 1.) Compounding the problem, Defendant argues, the Complaint "lacks any allegations that English was the actual decision-maker regarding many of the discrete employment actions that form the basis of Plaintiffs' claims." (*Id.* at 3; *see also* ECF No. 7, at 10-14.) While the Court understands Defendant's concern, the Court is not persuaded by Defendant's argument at this juncture of the case.

Defendant's argument both overstates and understates the effect of the factual allegations in Plaintiffs' Complaint. These Plaintiffs are (for now) properly joined as Plaintiffs not simply because they are over 40 years old and have alleged discriminatory animus by one key actor: they also share the important characteristic of having been (allegedly) harassed, terminated, and/or constructively discharged based on their age. So Defendant's concern that "every worker who is over 40 could be joined in this action" misstates who may be properly joined under Plaintiffs' theory of the case. To the extent that the Plaintiffs' theory of liability makes it theoretically possible for additional employees over age 40 to be joined as Plaintiffs, it is only possible *if* Mr. English's age-based animus led to similar harassment and/or adverse employment actions against such employees.

As for the Defendant's argument that there is no allegation that Mr. English was the

"actual decision-maker" with respect to the individual Plaintiffs' claims, the Defendant's reading of the Complaint is too narrow. The Complaint is replete with allegations that Mr. English is the veritable mastermind of a scheme to eliminate certain older workers from Defendant's employ. While Mr. English is not alleged to be the *immediate* supervisor of each Plaintiff, the Complaint is clear enough in its allegations that English was the key actor behind the various adverse actions that Plaintiffs allege to be discriminatory. While discovery might shed more light on Plaintiffs' theory — or, conversely, show the theory to be bogus — it is simply too early to declare Plaintiffs' claims to be improperly joined.

### B. Separate Trials Under Rule 42(b)

In the alternative, Defendant asks this Court to order separate trials of the individual Plaintiffs' claims. (ECF No. 7, at 15.) Fed. R. Civ. P. 42(b) provides that the court may order a separate trial of any claim or issue in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Defendant argues that the dangers of jury confusion and prejudice to its defense render separate trial necessary under Rule 42(b).

For many of the same reasons set forth above in denying severance under Rule 21, this Court does not find it appropriate to order separate trials under Rule 42(b) at this time. At this early stage of the case, it is simply too early to tell whether the testimony and evidence of one Plaintiff will be relevant to the claims of the other Plaintiffs. *See Lee*, *supra*, at *33. Even assuming that there will be prejudice to Defendant if a jury is entitled to consider each Plaintiff's claims in the context of a single trial, the Court is not yet in a position to be able to say whether the prejudice is so substantial as to outweigh the judicial efficiency of a single trial. *See Smith*, *supra*, 2002 U.S. Dist. LEXIS 3883, at *17.

Accordingly, the Court denies Defendant's alternative relief of separate trials at this time, without prejudice to renewing the motion at a later time.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Sever Plaintiffs' Claims or, Alternatively, for Separate Trials (ECF No. 7) is **DENIED**, without prejudice to Defendant renewing the Motion at a later time after a fuller development of the factual record through discovery.

**IT IS SO ORDERED.**

                                                  **/s/ Gregory L. Frost**
                                                  **GREGORY L. FROST**
                                                  **UNITED STATES DISTRICT JUDGE**